# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| | ) **CASE NO. 23CV198** |
| **JANE DOE (A Pseudonym)** | ) |
| | ) **AMENDED** |
| **Plaintiff,** | ) **COMPLAINT FOR** |
| | ) **VIOLATION OF** |
| | ) **(1) TITLE VII O OF** |
| **V.** | ) **CIVL RIGHTS ACT,** |
| | ) **1964 (2)** |
| | ) **AMERICANS WITH** |
| **NEW YORK CITY DEPARTMENT OF** | ) **DISABILITIES** |
| **EDUCATION (NYC DOE), DR. LINDA CHEN** | ) **ACT, 1990** |
| **KIMBERLY WITTMER, LUCIOUS YOUNG** | ) |
| **NORA LOVETT** | ) |
| | ) **JURY TRIAL** |
| **Defendants.** | ) **DEMAND** |

_____

Plaintiff Jane Doe (a pseudonym) ("the Plaintiff"), filing a Pro Se Complaint in this action against Defendants, New York City Department of Education (NYC DOE), Dr. Linda Chen, Kimberly Wittmer, Lucious Young, Nora Lovett (collectively, "Defendants"), hereby alleges as follows:

## <u>NATURE OF CLAIMS</u>

This is an action for declaratory, injunctive, and equitable relief, as well as monetary damages, to redress the Plaintiff's grievance against Defendants' unlawful employment practices of which Plaintiff is a direct victim, including but not limited to discriminatory treatment and harassment of Plaintiff due to her perceived disability and unlawful retaliation against her after she complained about unlawful discrimination in the workplace in violation of Title VII of the Civil Right Act of

1964, 42 U.S.C. § 2000 et seq. ("Title VII") and Americans with Disabilities Act (A.D.A.), 42 U.S.C. § 12101, et seq.

## JURISDICTION AND VENUE

The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the action is based on Title VII of the Civil Rights Act and the Americans with Disabilities Act. The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

Venue is proper under 28 U.S.C. § 1391 because all of the conduct giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

Pursuant to the New York State General Municipal Law § 50-e, a notice of claim must be properly served within 90 days from the date of occurrence. A proper Notice of Claim was filed on February 5, 2021. (**Exhibit 1**).

Prior to the filing of this Complaint, Plaintiff filed a charge of discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") (**EEOC Charge No. 520-2021-03029**), on or about September 23, 2021, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII") and Americans with Disabilities Act of 1990.

Upon information and belief, the EEOC provided Defendant with notice of these charges of discrimination and Retaliation.

Upon information and belief, the EEOC conducted and completed an investigation into Plaintiff's discrimination and retaliation charges against the Defendant.

After the conduct of investigation pursuant to Section 706 of Title VII, the EEOC found reasonable cause to believe that the Plaintiff was discriminated against and harassed based on perceived disability and was also subjected to Retaliation in violation of Title VII.

The U.S. Equal Employment Opportunity Commission issued a Notice of Right to Sue on October 18, 2022 (**Exhibit 2**) authorizing Plaintiff's filing of the foregoing Complaint.

The Plaintiff took all the necessary steps to exhaust her administrative remedies.

All conditions precedent to the filing of the suit have been fulfilled and discharge in entirety, hence the instant complaint is fully ripe.

This Complaint is being filed within 90 days of the Plaintiff's receipt of the EEOC Notice of Right to Sue.

## MEMBERSHIP IN A PROTECTED CLASS

Membership in the protected class is defined "as a person with an actual or perceived disability" within Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Acts (ADA). Furthermore, "transitory and minor" mental health disability is protected against unlawful acts of discrimination under ADA as a perceived mental health disability when the condition lasts less than the six (6) months (*See* 42 U.S.C. 12102(3)(B)).

Plaintiff qualifies as a member under ADA. Defendant perceived Plaintiff as psychologically disabled and ordered Plaintiff to undergo a Psychiatric evaluation on November 9, 2020 (**Exhibit 9**).

Defendant's Medical Examiner's determination on December 2, 2020, that Plaintiff was fit to return to work (**Exhibit 10**), does not preclude Plaintiff from protection under ADA law as a person with a perceived disability.

## NEXUS BETWEEN PROTECTED CLASS AND DISCRIMINATORY ACT

Members of a protected class have the right to be free and protected from discriminatory actions that "*adversely affects any aspect of an employee's terms and conditions or privileges of employment*" (*See Chancellor Regulation A-830), which incudes but is not limited to employer's "failure to promote, a demotion, a significant workplace transfer…Discrimination against such [a] person … in terms, conditions, or [reductions in] privileges of employment…*") (*See New York Exec Law § 296*)

*Demotion is considered an adverse employment activity from which ADA protects class members.  Plaintiff was demoted on December 10, 2020, from a G5 (**Exhibit 15**) position as Director of Policy and Engagement position (**Exhibits 17, 18**) to a G-4 position as Director of Special Projects (**Exhibits 19, 20, 21, 22**).*

The assertion that Plaintiff's position changed due to a "reorganization" fails because (1) the Chief Academic Office (CAO), Linda Chen states, there was "no re-organization" (**Exhibit 9 p. 3**) in the psychological evaluation referral documents; and (2) Plaintiff's name is not included on the list of staff reassigned for the reorganization that took place within the CAO's division (**Exhibit 13**).

## *PARTIES*

- The Plaintiff, (a pseudonym), has been a New York City Department of Education employee since 2014. Prior to the unlawful demotion, Plaintiff served as NYC DOE as the Director of Policy and Engagement in the D.O.E.'s Office of the Chief Academic Officer (CAO) (**Exhibit 14**). At all relevant

times herein, Plaintiff (a pseudonym) has met the definition of "employee" under all applicable statutes.

- The Defendant New York City Department of Education (NYC DOE) is the department of the government of New York City that manages the city's public school system. At all relevant times herein, the NYC DOE met the definition of "employer" under all relevant statutes.

- Defendant Dr. Linda Chen is the Senior Deputy Superintendent of Academics of Boston Public Schools (B.P.S.) at the New York City Department of Education located at 2300, Washington Street Roxbury, MA 02119.

- Defendant Kimberly Wittmer is an Interim Acting Executive Director of Core Curriculum, Division of Curriculum and Instruction Division of Teaching and Learning (**Exhibit 22**)working at the New York City Department of Education, located at 52 Chambers Street, New York NY 10004 and residing at 309 E 87th St, New York, NY 10128.

- Defendant Lucious Young is a Senior Executive Director of Curriculum, Instruction, & Professional Learning at the New York City Department of Education, located at 52 Chambers Street, New York, NY 10004.

- Defendant Nora Lovett is the former Deputy Executive Director, Instructional Programs at the New York City Department of Education. (she is retired and is now working at the NYC DOE on a part-time basis), located at 52 Chambers Street, New York, NY 10004 residing at 99 Bellmore Ave Point Lookout NY 11569 or at 500 E 77th St, New York, NY 10162

### *FACTUAL ALLEGATIONS*

1. The Plaintiff commenced employment with the NYC DOE in 2012 as Consultant in Division Research and Data where she worked for 10 months as a Data Analyst. In 2014, Plaintiff returned the agency as a Knowledge Analyst in the Division of Human Resources and was promoted to the Assistant to the Chief of Staff for the Chief Executive Officer within the Division of Human Resources in the fall of 2015. Soon thereafter, Plaintiff was hired to assuming the entry level leadership position as "Director of Special Projects" to the Deputy Chancellor (DC) of Operations who invited her to apply to the position in the agency headquarters.

2. The Plaintiff was promoted twice, after that, under the leadership of the DC of Operations, first to Director of Operations Support from 2015 to 2016, then the DC received a request by the Chief Executive Officer of Schools Support for the Plaintiff to serve as his Director of Operational Policy and Research for School Support Services, which was approved and the Plaintiff lead the development and implementation of the city-wide initiative Breakfast in the Classroom ("BIC") (See BIC video), as well as designed the electric bus pilot program for the Division of School Transportation from 2016 to 2018 (See Electric Bus Pilot proposal).

3. From 2018 to 2020, the Plaintiff served as Director, School Support Services within the Division of Compliance Services in the General Counsel Office where Plaintiff managed a team of lawyers and senior Compliance Officer staff to ensure 1,600 schools complied with 50 Federal, State regulations and Chancellor Priorities. In this capacity, the Plaintiff developed and improved upon internal policy, procedures and public facing engagement including training strategies.

4. At the onset of the COVID-19 pandemic, the Plaintiff was competitively selected, after interviewing with nine senior staff members, to perform in the newly created

executive leadership position as Director of Policy and Engagement to the Chief Academic Officer (CAO). (**Exhibit 16**)

5. Dr. Linda Chen was the Chief Academic Officer (C.A.O.) and the Plaintiff's Supervisor.

6. Accepting the position on March 18, 2020, the Plaintiff hit the ground running, writing the CAO's testimony (See draft testimony) for her appearances before the City Council on COVID-19 policy, appearing on behalf of the agency and CAO in public conversations with City Council members, such as Franciso Moya and constituents (See appearance poster) and authored a citywide Parent Guide (See parent guide) that provided policy clarification, academic, transportation, food, housing resources, and other critical opportunities for children and parents during an unprecedented time in NYC school history.

7. On November 9, 2020, Donald Conyers, First Deputy Chancellor, N.Y.C. Department of Education, approved proceedings initiated by Dr. Linda Chen, Chief Academic Officer, D.O.E., wherein Dr. Linda Chen contrived a false accusation about the alleged mental fitness of Plaintiff. (**Exhibit 9**)

8. On November 10, 2020, Katherine G. Rodi, Executive Director of the Office of Employee Relations reassigned the Plaintiff to the Employee Relations Reassignment Unity pending the finalization of a fitness determination by a D.O.E. Medical Examiner.

9. On November 13, 2020, Lorraine Haynes, Director of H.R. Connect Medical Leaves and Records, provided the Plaintiff advising her to attend a medical examination.

10. Once December 2, 2020, Dr. Anny Garner, the Medical Examiner, on behalf of the NYC DOE HR Connect Medical Leaves and Records Administration, conducted a fitness examination that reiterated the determination of Dr. Richman, stating that the Plaintiff was fit to return to work immediately. (**Exhibit 10).**

11. On December 10, 2020 is the date on which Plaintiff was unlawfully demoted. Ms. Alicia Roman, former Chief Operating Officer of the Office of the C.A.O., called a telephonic meeting with Plaintiff, and Defendant (Dr. Linda) Chen was present on the call at 1PM in the afternoon. At that time, Ms. Roman stated that Plaintiff would no longer be reporting to Defendant (Dr. Linda Chen) effective immediately, since that the position had been **canceled**, and Plaintiff was being reassigned permanently to a different unit.

12. Neither Ms. Roman or Dr. Chen made any mention that the reassignment was due to a reorganization and Dr. Chen had clearly stated that there was no reorganization in her completion of the psychological evaluation referral. (**Exhibit 9 p. 3**)

13. On December 11, 2020, the Plaintiff received an email from Ms. Alicia Roman (**Exhibit 11),** attached to a fabricated job description (**Exhibit 12**), which deliberately intended to mislead the Plaintiff into a belief that this position was similar in responsibility to the position she previously held when she reported to the Defendant (Dr. Linda Chen). This was a misrepresentation of the truth.

14. On December 14, 2020, the Plaintiff reported to her new supervisor Defendant (Kim Wittmer) who served at the time as Senior Director of Core Curriculum & Publications Office of Curriculum, Instruction and Professional Learning.

15. Plaintiff understood from Defendant (Kim Wittmer) that Plaintiff was replacing an employee named Katherine Lennon (**Exhibit 21**) and performing her previous

duties as Director of Special Projects (**Exhibit 19**), a position that was six reporting levels below the position, the Plaintiff was previously serving. (**Exhibit 23**).

16. On December 14, 2020, following her conversation with Defendant (Kim Wittmer), Plaintiff conducted some research and learned that Katherine Lennon held a Director of Special Projects position (**Exhibit 19**), a G-4 position for which she was paid $95,059 per annum. (**Exhibit 20**).

17. The Plaintiff soon realized that she had been reassigned to a position that is exactly six (6) reporting levels below the position she was previously assigned (**Exhibit 23**) in her previous G-5 position (**Exhibit 18**), as Director of Policy and Engagement (**Exhibit 17**) for which she received a salary of $133,673 (**Exhibit 15**).

18. The Plaintiff retained an attorney, Mr. Noah Kinigstein, to commence negotiations with the NYC DOE General Council Office in the hope of the D.O.E. reviewing the facts and righting the wrongs committed by Defendant (Dr. Linda Chen), but it was to no avail.

19. On February 8, 2020, Plaintiff reached out to Deputy Chancellor Adrienne Austin, the former Deputy Chancellor of the Division of Community Empowerment, Partnerships, and Communications, who jumped at the opportunity to hire the Plaintiff. (**Exhibit 24**)

20. The Plaintiff was offered the role of Executive Director of Family and Community Empowerment which paid $165,000 per annum. In the meeting, Deputy Chancellor Austin stated that she first needed to discuss a lift and switch with Defendant (Dr. Linda Chen) and the Chief Operations Officer Alicia Roman to add Plaintiff to her team.

21. On March 30, 2020, Deputy Chancellor Adrienne Austin explained in an email to Plaintiff that she had discussions with Defendant (Dr. Linda Chen) and was still trying. (**Exhibit 24**).

22. Later on, however, in a call with the Plaintiff, Deputy Chancellor Adrienne Austin explained that Defendant (Dr. Linda Chen) refused to release the Plaintiff from the demoted position, deliberately blocking the Plaintiff's transfer and promotion to the Executive Director position under Deputy Chancellor Adrienne Austin, for which Plaintiff was both qualified and requested for by Ms. Austin. This was a prime example of retaliation made against the Plaintiff by blocking her prospect for a better career opportunity without any rhyme or reason.

23. On February 5, 2021, Plaintiff filed a Notice of Claim preserving her right to sue Defendants on the developing discrimination issues (**Exhibit 1**).

24. On April 8, 2021, after repeatedly articulating to the new supervisor and Defendants (Kim Wittmer), who required unrealistic turnaround time for work that was not organized and impossible to complete in the time frame Plaintiff was given, the Plaintiff asked the Defendants (Kim Wittmer) to file a claim on the Plaintiff's behalf for retaliatory discrimination, for which the Defendant Kim Wittmer questioned the Plaintiff and never filed on Plaintiff's behalf in violation of EEOC requirements. (**Exhibit 63**).

25. Having no recourse for justice other than by pursuing an EEOC case within and outside of the NYC DOE, the Plaintiff filed a discrimination case in April 2021, which was not responded to by the N.Y.C. Department of Education until October 27, 2021. (**Exhibit 3**)

26. In November 2021, the Plaintiff filed another OEO complaint. Investigator Nirmala Bhimsen contacted the Plaintiff who had already filed an EEOC Case

with the Federal Government, and the Plaintiff was made aware in a conversation with Investigator Nirmala Bhimsen that the NYC DOE was in receipt of the Federal EEOC filing and would no longer proceed with the DOE EEOC case. (**Exhibit 4**)

27. Defendants' deliberate and malicious acts of retaliation, discrimination, harassment, the creation of a hostile work environment for the Plaintiff escalated following the filing of Plaintiff's OEO complaint with the agency.

28. On November 29, 2021, following the Thanksgiving holiday, Plaintiff returned from a trip to Virginia, where her husband was exposed to and contracted COVID-19. Hence, the Plaintiff notified the Defendants (Kim Wittmer. (**Exhibit 34**)

29. On November 30, 2021, Plaintiff notified Defendants (Kim Wittmer) that she was ill when she woke up, exhibiting more serious symptoms of COVID-19, even though she did not test positive for COVID, but it was established later that Omnicron was highly contagious and did not behave like the earlier strain of COVID. (**Exhibit 35**)

30. On November 30, 2021, due to close contact and exhibiting mild symptoms, Plaintiff was directed to quarantine for ten days by the Department of Health, which provided an isolation order attached to law and regulation requiring mandatory quarantine for ten days. (**Exhibit 33**)

31. An anonymous employee in the Timekeeping unit, a division of Human Resources responsible for administering COVID-19 policy related to employee time, denied knowing what the Q.A.P. code was used for, which Plaintiff explained entitled her to paid leave during quarantine. (**Exhibit 31**).

32. The official timekeeping code policy clearly states that Q.A.P. code is used by staff with a negative COVID-19 test who have been ordered to quarantine. (**Exhibit 32**).

33. The absence policy form PD 19 also has a section that may be completed by employees to Excuse Absences for Isolation (**Exhibit 36**).

34. Despite all of this policy provision that entitled Plaintiff to paid leave during quarantine, Plaintiff was explicitly denied those by both Defendant (Kim Wittmer) and the unidentified, co-conspirator Human Resources representatives.

35. Plaintiff was forced to put in a request for an advance of 15 days of paid annual leave for which it took over a year to pay back, time that would have been available to use in an emergency to care for her child.

36. Defendant (Kim Wittmer's) wrongful conduct was especially heinous due to her discriminatory acts against Plaintiff despite having been kept abreast continuously (**Exhibit 67**) of the severity of Plaintiff's child's medical conditions for which the child had been in Anorexia Nervosa clinics in two different states during the COVID-19 pandemic in 2020 and who had been placed on Medical Leave in 2021 from her high school for the calendar year. (**Exhibit 65**).

37. Defendant (Kim Wittmer) callously suggested that Plaintiff take FMLA leave to care for the child after Plaintiff explained how dependent she was on medical insurance to cover the exorbitant expenses for covering the child's medical care (**Exhibit 66**)

38. On December 16, 2021, Plaintiff received notice from the EEOC stating that the NYC DOE had responded to her charge. (**Exhibit 7**)

39. On December 21, 2021, Plaintiff returned to an empty office, void of any other employees in the section where she was assigned to work, which housed approximately ten other staff members. Plaintiff continued working alone until after the New Year, clearly having been singled out to work while other staff members were permitted to work from home.

40. The Plaintiff continued to arrive between 7:30 am and leave at 2:30 pm, taking her lunch period the last hour of her workday so that Plaintiff could go home and feed her anorexic daughter.

41. On January 7, 2022, Plaintiff received an email from Defendants (Kim Wittmer), claiming that Plaintiff was leaving the office early without informing her.

42. On January 8, 2022, Defendant (Kim Wittmer) agreed to Plaintiff's work arrangement for a while when Plaintiff's daughter was home on medical leave from school.

43. On January 14, 2022, the Special Commissioner of Investigation for the City of N.Y.C. School District produced a letter recommending the D.O.E. take appropriate disciplinary action against the Plaintiff and further stating that the Plaintiff's conduct may have violated the conflicts of interest provisions of the New York City charter, which is administered by the New York City Conflicts of Interest Board, when the N.Y.C. Conflict of Interest Board had already resolved this matter in July 2020. (**Exhibits 53 to 59)**

44. On July 27, 2020, the Plaintiff settled an N.Y.C. Conflict of Interest Board (**Exhibits 58**) claim with a fine of $250.00 (**Exhibits 59**) for having her automatic signature appear on an email inquiring about special education services for your child who had been diagnosed with ADHD and a reading difference.

45. The Board stated that it considered the Plaintiff's high-level city position, that the "Plaintiff sent only one email, and in an indirect manner" wherein the Plaintiff invoked her D.O.E. title in connection with her personal request.

46. Defendant (Kimberly Wittmer) emailed a summon to Plaintiff to review the Special Commission of Investigation (S.C.I.) findings dated January 14, 2022, concerning the alleged inappropriate use of D.O.E. email and employee title, also advising the Plaintiff to be aware that this meeting may lead to disciplinary action. (**Exhibits 53, 54, 55**)

47. At that meeting, Plaintiff noticed that neither of the original S.C.I investigators by whom she was interviewed in 2019 were mentioned in the determination she was handed. Plaintiff wrote to the investigators, Steven King and Robert LaRocco who had told Plaintiff back in 2019 that she was cleared of the allegations, and the case would be closed. (**Exhibit 57**).  However, Plaintiff never received a reply.

48. Upon further inspection of the January 14, 2022, determination, Plaintiff noticed that S.C.I Assistant Investigator Vanessa Rivera denied having ever spoken with the Plaintiff, upon inquisition by an unnamed source on behalf of Defendants. (**Exhibit 55 footnotes**)

49. Investigator Rivera was clearly not assigned to Plaintiff's case which by this time of her investigation was more than three years old and she appears to have been coaxed into agreeing to review the Plaintiff's emails without conducting an interview with the Plaintiff nor using information obtained from the original in-person interview conducted by Steven King and Robert LaRocco.

50. On January 20, 2022, Defendant Nora Ann Lovett, the supervisor of Defendant Kim Wittmer, came to Plaintiff's desk and informed her, followed up with an

email, that she would be moved across the hall in the room where Defendants (Nora Ann Lovett and the Defendant Kim Wittmer) use to sit. (**Exhibits 60**)

51. On January 21, 2022, Plaintiff moved, without protest, to her new location from room 113 to room 105 and worked without any incident.

52. On January 21, 2022, Plaintiff received an email from Defendant Norah Ann Lovett, accusing her of leaving the office before the day was over to which Plaintiff responded to Defendant Norah Ann Lovett explaining the personal circumstances of her daughter struggling with anorexia.

53. Between May 2021 and January 2022, Plaintiff kept Defendants (Kim Wittmer, a subordinate of Defendant Norah Ann Lovett), aware of the developments with her daughter. (**Exhibits 63**)

54. On January 25, 2022, Defendants (Norah Ann Lovett and Defendant Kim Wittmer), as a follow up to an email ((**Exhibits 46**) invited Plaintiff into the hallway and informed her that she must work from 9 am to 5 pm regardless of her personal circumstances with her daughter and despite not having responsibilities that require 9 am to 5 pm execution and that have been carried out between 8 am and 4 pm since the Plaintiff began working in the division in December of 2021.

55. Defendants (Norah Ann Lovett and Defendant Kim Wittmer) denied Plaintiff the managerial employee privilege of a "Flex Schedule" (**Exhibits 63**) to which Plaintiff is entitled as a G-5 manager.

56. On April 15, 2022, Defendants (Kim Wittmer) wrote a letter summarizing the meeting regarding the discussion with the Plaintiff about the Conflict-of-Interest case that the City Conflict of Interest Board had already settled and issuing a

uniliteral investigation and determination resulting in a denial of Plaintiff's right to due process. (**Exhibits 56**)

57. On August 1, 2022, the Plaintiff received an email from Jared Feirstein, Confidential Investigator N.Y.C. Department of Education, stating Office of Special Investigations (O.S.I) was investigating, which was filed by Defendants (Kim Wittmer) alleging that the Plaintiff had stolen time, an offense, if found guilty, may result in the termination of an employee even if he or she holds a permanent civil service title. (**Exhibit 41**)

58. In the interview, the O.S. I. investigator suggested to Plaintiff that she should request a Cybershift card, a standard office item that facilitates employees' ability to clock in and out of the building using a station located on each floor, especially when the computers start slowly or crash and prevent employees from clocking in or out in a timely manner.

59. Since contacting Defendant (Kim Wittmer) after two years for the Cybershift card seemed a futile undertaking, Plaintiff reached out to Ms. Alburg.

60. On September 28, 2022, Ms. Alburg promptly coordinated the issuance of a Cybershift card for use by the Plaintiff. (**Exhibit 37**)

61. Due to Defendant (Kim Wittmer) failure to issue Plaintiff a Cybershift card for over two years under her supervision, Defendant (Kim Wittmer) pursued false allegations against Plaintiff for alleged "attendance issues" either through O.S.I or by conducting her own unilateral, judge and jury investigation, without providing Plaintiff an opportunity to respond, taking away Plaintiff's right to due process under the U.S. Constitution.

62. The Defendants (Kim Wittmer) has never provided policy about any office procedures including attendance, the preferred timekeeping practices, etc. and as recently as January 5, 2022, the Plaintiff has continued to request office policy guidelines from Defendants (Kim Wittmer) without success. (**Exhibit 62**)

63. Plaintiff submitted to the investigator a response to each of the dates and violations alleged by Defendant (Kim Wittmer). (**Exhibit 43**) Plaintiff also supplied the O.S.I investigator with an example of the poor timekeeping of Defendant (Kim Wittmer) compared with the Plaintiff's prior timekeeper, who unlike Defendant (Ms. Wittmer), had always approved the Plaintiff's time in a timely and professional manner, which Defendant (Ms. Wittmer) had never done. (**Exhibit 44**)

64. On September 12, 2022, Plaintiff received an email from Defendants (Kim Wittmer) summoning Plaintiff to a disciplinary meeting scheduled on September 15, 2022, at 2:30 pm to discuss absences, a unilateral disciplinary action void of due process accommodations for the Plaintiff and performed without the application of proper investigation methods. (**Exhibits 47, 48**)

65. On September 13 and September 14, 2022, Plaintiff contacted Defendant Kim Wittmer's new supervisor, Defendants (Lucious Young), who replaced Defendants (Norah Ann Lovett), to intervene, thus to prevent the ongoing harassment, Plaintiff was suffering from under the supervision of Defendants (Kim Wittmer) providing the Defendants (Lucious Young) with Plaintiff's OEO allegations which he is obligated to report and advising Defendants (Lucious Young) that compliance with the law mandates his mitigation of the conflict between Defendants (Kim Wittmer) and the Plaintiff. (**Exhibit 64**)

66. On September 19, 2022, Plaintiff was invited to interview (**Exhibit 27**) for a Senior Director, Community Partnerships position (**Exhibit 26**) in same division formerly lead by Deputy Chancellor Adrienne Austin, Office of Family and Community Engagement Division.

67. On September 21, 2022, Jennifer Alburg (the former Chief of Staff to Defendants Lucious Young) provided Plaintiff with a desk phone, standard office equipment which the Defendants (Kim Wittmer) had intentionally failed to provide Plaintiff for the two years that she reported to Ms. Wittmer. (**Exhibit 40**)

68. Due to Defendants (Kim Wittmer's) unlawful, desperate, and retaliatory conduct to not provide a desk telephone, the Plaintiff was made unreachable to past and present staff.

69. This resulted in the Plaintiff being forced to use her personal cell phone to contact other employees in the course of performing her professional responsibilities, to get technical assistance when the computer crashed, regularly, and when attending team's meetings and calling schools.

70. Not being issued a desk phone was a proximate cause of significant hardship to Plaintiff because it not only prevented her from receiving any emergency communications concerning her daughter from her doctors, or teachers. Further, being forced to use Plaintiff's personal cell phone, her personal cell number was exposed to countless people with whom the Plaintiff would not have otherwise shared her personal cellphone number for reasons of security and avoidance of unwanted contact, for example new colleagues, other school staff who are strangers to the Plaintiff.

71. Consequently, as a result of Defendants (Kim Wittmer) not providing the Plaintiff the basic office equipment of a desk phone that is standard practice in all public

and private places of business, Defendants (Kim Wittmer) made working exceedingly difficult for the Plaintiff as well as unlawfully subjected Plaintiff to compromising her confidentiality and violating her right to privacy.

72. On September 28, 2022, Ms. Alburg promptly coordinated the issuance of a Cybershift card for use by the Plaintiff. (**Exhibit 37**)

73. On October 4, 2022, Plaintiff received another summon from Defendants (Kim Wittmer) for a disciplinary absence meeting at which Plaintiff was advised that her attorney was not authorized to attend such a meeting. (**Exhibits 47, 48**)

74. Rather than abiding by the EEOC law and mitigating the conflict between Defendants (Kim Wittmer) and the Plaintiff, Defendants (Lucious Young) escalated the issues by jointly attending this meeting held on October 17, 2022. (**Exhibit 64**)

75. At this meeting, Defendants (Kim Wittmer) proceeded to state unfounded allegations, against Plaintiff, of calling out at the last minute or leaving early, to which Defendants (Kim Wittmer) refused to provide an opportunity for Plaintiff to receive the allegations in writing so as to provide a follow-up response.

76. Defendants (Kim Wittmer) pronounced that she would make a unilateral determination based on this discussion which Plaintiff could not fully participate in because Plaintiff was not made aware of the details of the meeting until being at the meeting with Defendants (Kim Wittmer) and Defendants (Lucious Young).

77. The conduct of this meeting was contrary to the democratic way investigator Jared Feirstein conducted the investigation. (**Exhibit 48**)

78. Highly qualified to serve in this capacity, Plaintiff advanced to the second and last round of interviews on October 4, 2022. (**Exhibit 28**)

79. Upon not receiving a response from the interviewers, neither by the time Plaintiff was told a decision would be made nor receiving a courtesy email about the status of her application, Plaintiff learned that due to Defendant (Kim Wittmer's) wrongful allegations of theft of time brought against Plaintiff with O.S.I, Plaintiff had a "red flag" on her HR record which would deter the office from advancing with her application for the Senior Director, Community Partnerships position.

80. Plaintiff never heard back from the office but was forwarded the announcement that the position had been filled by a less qualified candidate. (**Exhibit 29, 30**).

81. Defendant's wrongful acts of initiating an unsubstantiated case with O.S.I which the investigator notified Plaintiff he would close has adversely harmed Plaintiff's position to advance in the agency, damaging her personal reputation among colleagues working in the division in which Plaintiff was interviewed, and unlawfully denying her to secure the professional opportunities for which she is duly qualified.

82. Following the absences summons meeting of October 17, 2022, Plaintiff was provided with a letter that Defendant (Kim Wittmer) claimed to be summarizing the meeting but is not consistent with the recording and includes a considerable amount of information that was never covered in the meeting and is now a part of the Plaintiff's permanent human resources record, representing untrue facts never discussed at the meeting (**Exhibit 49**).

83. Defendant (Lucious Young), in addition to violating his obligation as Defendant (Kim Wittmer's) supervisor to mitigate the effects of possible EEOC violation by Defendants (Kim Wittmer), is also an accomplice to Defendant (Kim Wittmer's) harassment as his presence in unilaterally arranged meetings and inaction to mitigate constitute both his participation in the act of harassment and

also his endorsement of the Defendants (Kim Wittmer's) harassment as her supervisor and agents of the NYC DOE government agency.

84. Plaintiff has consistently provided Defendant (Kim Wittmer) with adequate notice of anticipated days off, such as attending in-person Doctoral Program in Law and Policy in which Plaintiff is enrolled. (Exhibits 50, 51).

85. However, Defendant (Kim Wittmer) intentionally allowed the advanced permission requests to attend her 2023 classes once per two months to expire in Cybershift and has not extended Plaintiff the professional courtesy of providing an explanation or even responding to Plaintiff's email advising of the expired requests. (Exhibit 52)

86. Defendant (Kim Wittmer) false allegations that Plaintiff's absences are an employment violation is a misrepresentation and the intentional denial of Plaintiff's employee benefits, and her disciplinary actions against Plaintiff have all been a wrongful, arbitrary and malicious exercise of Defendant, (Kim Wittmer's) power as a supervisor.

87. The filing of the unsubstantiated allegations against Plaintiff by Defendants (Kim Wittmer) placed a "flag" on the Plaintiff record, which all internal Human Resources staff could see and recognize as there is an open investigation against Plaintiff. This "flag" resulting from Defendant (Kim Wittmer's) S.C.I. allegations have damaged Plaintiff's ability to secure a position outside Defendants (Kim Wittmer's) division and away from her harassment.

88. Since October 2022, the Plaintiff has not received any work assignments from Defendant (Kim Wittmer), has been excluded from team meetings, social events in the office, team communication emails, all of which the Plaintiff has learned about from fellow employees.

89. Plaintiff has received no new work assignments in November 2022 (Exhibit 61) and continued to inquire about receiving work from Defendant (Kim Wittmer), suspecting this was another attempt to entrap Plaintiff into allegations of her not doing office work when none was being assigned.

90. On November 2, 2022, the Plaintiff received an email from O.S.I investigator Jared Feirstein confirming his intent to close the investigation into Defendants (Kim Wittmer's) allegations that the Plaintiff had stolen time. (**Exhibit 25**)

91. On November 7, 2022, Defendants (Kim Wittmer) supplied a letter that falsely alleges to describe the interview with Plaintiff that took place in respect of allegations of her absence, however it fails to provide a true account of the discussion held in the meeting. (**Exhibits 48, 49**)

92. On December 5, 2022, just ten (10) days before Defendants (alawyers) submitted their December 15, 2022 rebuttal to SDHR (**Exhibit 8**), the Plaintiff received an email from Latchmi Sutram, Deputy Director of Operations, Core Curriculum and Social Studies Core Curriculum Implementation and Publications Division, who works in the same Division of Curriculum and Instruction as Defendants (Kim Wittmer) stating that a laptop was now available for purchase on behalf of the Plaintiff (**Exhibit 38**).

93. On December 12, 2022, just three (3) days before Defendants (lawyers) submitted their December 15, 2022, rebuttal to SDHR, the Plaintiff received another email from Latchmi Sutram confirming that the package containing the laptop had been delivered with instructions to the Plaintiff to pick up the delivery from the mailroom. In actuality, however, the device had not been delivered to the mailroom but had been delivered to Massachusetts.  Consequently, to date, the Plaintiff still is not in possession of this standard issued office equipment

which every other employee who reports to Defendants (Kim Wittmer) has received. (**Exhibit 39**)

94. As a result of Defendants (Kim Wittmer's) unlawful, desperate, and retaliatory conduct to not provide a laptop, when the Plaintiff is aware that all other employees received a laptop, the Plaintiff was forced to work in a hostile work environment in which the Plaintiff is aware of the explicit deliberate and disparate treatment she is receiving from Defendants (Kim Wittmer). This unlawful conduct results in the Plaintiff's work being more difficult because the employee privilege enjoyed by all other employees, (e.g.: to use their assigned laptop to take notes at meetings or to use it in other locations designed for employees to work on laptops in available spaces through the office building) is denied to the Plaintiff.

95. Defendants (lawyers) false excuses to not provide the Plaintiff with a standard issued laptop in nearly two years of employment on the team should be treated as  blatant concoction of evidence and afterthought on their part, since the extraordinarily large budget allotted to the agency and to the division in which the Plaintiff currently works allows for such facilities to be provided instantly.

96. On December 23, 2022, December 3, 2023, and December 4, 2023, the Plaintiff emailed Defendants (Kim Wittmer) before she left for the day to ask for work, while also providing work-related suggestions and to apprise her of the continued research into education related topics the Plaintiff was carrying out to stay busy. In this email the Plaintiff also inquired whether taking personal calls to speak to the Plaintiff's daughter, who continues to require ongoing social and emotional support, to make doctors' appointments, or to speak with her teachers, etc. may be taken on the phone or taken outside of the office. Defendants (Kim Wittmer) did not reply. (**Exhibit 62**)

## LEGAL ANALYSIS

## COUNT 1

**Title VII
(42 U.S.C. § 2000e, et seq.)
Americans with Disabilities Act of 1990
(42 U.S.C. § 12101, et seq.)**

**DISCRIMINATION BY ADVERSE CHANGE IN THE EMPLOYMENT**

- The Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

- The Plaintiff was discriminated against by the Defendants on the basis of perceived disability.

- The Plaintiff was demoted by the Defendants by transferring the Plaintiff to a position that was Six (6) Reporting Levels below the Director of Special Project position which was originally held by the Plaintiff. The reassigned post was essentially an entry level leadership position much lower than the Director of Special Projects position the Plaintiff served in for eight years and which reported to a Deputy Chancellor rather than the role now which reports to Defendant Kim Wittmer, whose current position remains Five (5) below that of the Plaintiff's position as Director, Policy, and Engagement.

- The Plaintiff was deliberately misled by the Defendants' (Dr. Linda Chen and Alicia Roman) about the position to which the Plaintiff was transferred and in that they ensured the Plaintiff that the title of Director, Policy and Engagement as well as the salary would remain the same and that the Plaintiff would be performing similar work. The Plaintiff was provided a fabricated job description that was inconsistent with the job description provided by the

Plaintiff's current supervisor, Defendant (Kim Wittmer). These acts by Defendants resulted in the significant injury to the Plaintiff's professional opportunities and future promotions, which are no longer accessible to the Plaintiff as a result of the demotion due to the low level of position and lack of complexity and significance of the work responsibilities.

- According to Chancellor's Regulation A-830, employees belonging to a protected class are protected against such conduct that both "adversely affects any aspect of an employee's terms and conditions or privileges of employment" and creates a "hostile, offensive and intimidating work environment."

- Under the *McDonnell Douglas* framework, to make a prima facie showing of disparate treatment under Title VII, a plaintiff must assert four necessary elements: "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and, in addition, has (4) some minimal evidence suggesting an inference that the employer acted with discriminatory motivation" *Littlejohn, 795 F.3d at 307.*

- Actions such as firing, and demoting are adverse employment actions for purposes of a discrimination claim. In addition, other actions that do not rise to the level of ultimate employment actions, such as a lateral transfer, an unfavorable reference that had no effect on a prospective employer's hiring decision, and the imposition of a more burdensome work schedule, may also be considered adverse employment actions in this context. These actions may dissuade a reasonable worker from making or supporting a charge of discrimination. *See White, 548 U.S. at 68; Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir.2000)*

## COUNT 2

**Title VII**
**(42 U.S.C. § 2000e, et seq.)**
**Americans with Disabilities Act of 1990**
**(42 U.S.C. § 12101, et seq.)**

### RETALIATORY DISCRIMINATION

- The Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

- The Plaintiff, when approached with other employment opportunities for which the Plaintiff was the desirable candidate, Defendants (Dr. Linda Chen) did not authorize the Plaintiff's transfer and effectively blocked the same by withholding approval.

- The Plaintiff, having reached the final stage of consideration for a position equivalent to the role and responsibility from which the Plaintiff was demoted, could not overcome the hurdle of having a "red flag" on her Human Resources record that indicated to hiring managers that the Plaintiff was under investigation by Defendants' agency, resulting in a less qualified candidate being offered the position and receiving the applicable salary increase.

- The Plaintiff's right to employment opportunity was sabotaged by Defendants' (Dr. Linda Chen and Kim Wittmer) through the discriminatory actions they each carried out that professionally harmed the Plaintiff.

- Title VII also bans retaliatory discrimination against those who complain of Title VII violations.

- 42 U.S.C. § 2000e-3(a). Section 704(a) of the Civil Rights Act reads, "It shall be an unlawful employment practice for an employer to discriminate against

any of his employees or applicants for employment, because he has opposed any practice made an unlawful employment practice or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing.

## COUNT 3

### Title VII
### (42 U.S.C. § 2000e, et seq.)
### Americans with Disabilities Act of 1990
### (42 U.S.C. § 12101, et seq.)

### HOSTILE WORK ENVIRONMENT

- The Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

- The Plaintiff was discriminated against and received a hostile environment at work from the Defendants, including initiation of frivolous and baseless disciplinary meetings by Defendants (Kim Wittmer and lawyers). Defendants disparate treatment of the Plaintiff is also reflected by not providing the Plaintiff the customary individual laptop, a desk telephone, or Cyber shift card to clock in and out each day like other employees for more than a year to facilitate time keeping by the Plaintiff, Instead, it is stated that it was done deliberately by the Defendants in order to capitalize on the Plaintiff time keeping limitations as an opportunity to repeatedly threaten the Plaintiff with disciplinary "summons" that could cumulatively create a potential cause for termination of the Plaintiff's employment, which the Defendants eventually and ultimately desired

- The Plaintiff faced multiple events contributing to this hostile work environment after filing the EEOC charge.

- Defendants (Kim Wittmer and unidentified agents working in the Human Resources, Timekeeping unit) deliberately and maliciously conspired together to deny the Plaintiff paid leave rights granted by Human Resources COVID-19 policy related to paid leave for which Plaintiff was entitled.

- The Plaintiff perceived the working environment to be abusive and hostile.

- Despite Defendant (Lucious Young) being on notice of the hostile work environment through Plaintiff's charges filed with the OEO, EEOC and SDHR, Defendants failed to undertake prompt and effective actions sufficient to stop the discrimination and harassment or the hostile work environment detailed herein or to prevent future discrimination and harassment in violation of the Plaintiff's rights.

- As a direct and proximate result of Defendant' illegal harassment and discrimination, the Plaintiff incurred significant financial and professional harm including but not limited to lost income and benefits, humiliation, loss of enjoyment of life, and emotional distress.

- A hostile work environment is one form of disparate treatment that is prohibited under Title VII. *See Raniola v. Bratton, 243 F.3d 610, 617 (2d Cir. 2001); see Feingold v. New York, 366 F.3d 138, 149 (2d. Cir. 2004).* To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complaint of conduct is objectively severe or pervasive and creates an environment that the Plaintiff subjectively perceived as hostile or abusive. *Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007)*

- The United State Supreme Court, in *Harris v. Forklift Systems, Inc.,* stated that several factors should be considered in deciding whether an employee has been subjected to harassment in the work environment that has altered the terms and

conditions of employment. The Court rejected the notion that a plaintiff had to prove severe psychological injury for the employer's wrongdoing to be actionable; instead, the Court deemed it sufficient that the employee reasonably perceived the work environment as hostile or abusive.

## COUNT 4

### Title VII
### (42 U.S.C. §§ 2000e, et. seq.)
### Americans with Disabilities Act of 1990
### (42 U.S.C. § 12101, et seq.)

### HARASSMENT

- The Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

- In perpetrating the above-described acts and omissions, the Defendants engaged in unlawful harassment in violation of Title VII and A.D.A., 1990.

- The Plaintiff perceived the working environment to be abusive or hostile, which caused Plaintiff sufficient stress and anxiety and led to the unlawful harassment of the Plaintiff.

- The Plaintiff was harassed at the hands of Defendants (Kim Wittmer, Norah Ann Lovett and guided by lawyers) by being punished, for filing with the OEO, EEOC and SDHR, through their continuous disparate hyper-scrutiny, micromanaging, and ongoing surveillance of Plaintiff's work schedule that created the undue hardship intended to conflict with Plaintiff's family responsibilities.

- Harassment is a form of employment discrimination that violates Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990 (A.D.A.).

- Harassment is unwelcome conduct that is based on race, color, religion, sex (including sexual orientation, gender identity, or pregnancy), national origin, older age (beginning at age 40), **perceived disability**, or genetic information (including family medical history). Harassment becomes unlawful where 1) enduring the offensive conduct becomes a condition of continued employment, or 2) the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider intimidating, hostile, or abusive.

- Under Title VII and A.D.A., the Defendants are strictly liable for a hostile work environment created by them.

- Additionally, Defendants knew or should have known of the conduct of their agents in violation of the Plaintiff's rights and still deliberately failed to take prompt and effective remedial action. The Defendants are vicariously liable for the actions of its employees in creating and permitting a hostile work environment, which constituted unlawful harassment in violation of Title VII and A.D.A.

## COUNT 5

**Title VII**
**(42 U.S.C. §§ 2000e, et. seq.)**
**Americans with Disabilities Act of 1990**
**(42 U.S.C. § 12101, et seq.)**

**RETALIATION**

- The Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

- At all times mentioned in this Complaint, 42 U.S.C. section 2000e and 42 U.S.C. § 12101, et seq. were in full force and effect and were binding on Defendants.

- The Defendant's acts complained of above effectively deprived the Plaintiff of equal employment opportunities as an employee in Retaliation for her complaints of discrimination, in violation of Title VII and A.D.A.

- The Plaintiff engaged in activities protected by Title VII and A.D.A. by complaining to Defendants about discriminatory practices based on her perceived disability, by opposing said practices, and by filing administrative charges with the OEO, EEOC and SDHR during her employment.

- The Defendants retaliated against the Plaintiff based on her protected activity and took material and adverse employment actions against her, including creating and permitting a hostile work environment and denying promotion.

- In Retaliation, Defendants (Dr. Linda Chen, guided by lawyers) sabotaged and did not allow the transfer of the Plaintiff to another position under another department of NYC DOE, for which Plaintiff was a deserving and qualified candidate.

- Plaintiff was harassed at the hands of Defendants (Kim Wittmer and Norah Ann Lovett) and was effectively punished, for filing an EEOC charge, through changes in Plaintiff's work schedule and bringing it in conflict with the Plaintiff's family responsibilities.

- The Plaintiff was harmed as a direct and proximate result of Defendants' foregoing conduct, which was a substantial factor in causing Plaintiff harm.

## COUNT 6

**Title VII**
**(42 U.S.C. §§ 2000e, et. seq.)**
**Americans with Disabilities Act of 1990**
**(42 U.S.C. § 12101, et seq.)**

### DISCRIMINATION BASED ON PERCEIVED DISABILITY

- The Plaintiff hereby repeats and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

- At all times mentioned in this Complaint, section 12101 was in full force and effect and binding on the Defendants.

- The Plaintiff was discriminated against on the basis of perceived disability.

- The Plaintiff was demoted by her supervisor, Defendant Dr. Linda Chen, on the basis of perceived disability, to a position that was six (6) reporting levels low and such demotion led to an adverse change in the employment of Plaintiff.

- By reason of Defendants wrongful demotion, the Plaintiff incurred damages including but not limited to lost income and benefits, humiliation, loss of enjoyment of life, emotional distress, damage to her professional reputation, alienation from professional opportunities and denial of merit-based job transfer and promotions equal to her level of expertise and experience, and other pecuniary and non-pecuniary losses.

- To establish a claim under the A.D.A., a plaintiff must demonstrate that she (1) is a disabled person within the meaning of the A.D.A.; (2) is qualified to perform the essential functions of her job either with or without reasonable accommodation and (3) was discriminated against because of her alleged disability. *See, Siemon v. AT&T Corp., 117 F.3d 1173, 1175 (10th Cir. 1997).*

- To meet the first prong of this prima facie case, that is, to demonstrate that one is a disabled person within the meaning of the A.D.A., a plaintiff must show either that she (1) has a physical impairment that substantially limits one or more of her major life activities; or (2) has a record of such an impairment; or

(3) is **"regarded as having such an impairment."** *42 U.S.C. § 12102(2)(A)-(C).*

- The Plaintiff was regarded as having a mental health impairment when Defendants initiated a formal psychological evaluation of the Plaintiff. The Defendants' Medical Examiner determination that the Plaintiff was fit to return to work in less than six months from the determination preserves the Plaintiff's membership in the protected class as defined by the A.D.A. for those with a perceived disability because it was "temporary and minor".

## <u>RELIEF AND REMEDIES</u>

WHEREFORE, The Plaintiff respectfully requests that the United States District Court, Southern District of New York issue a finding of probable case and a determination for remedies and relief in the form of, but not limited to:

- Restraining the Defendants permanently and without prejudice from taking any further discriminatory actions against the Plaintiff concerning this matter while Plaintiff is employed at the agency and after Plaintiff leave Defendants' employment, in perpetuity; and
- Disciplining the Defendants for all unlawful actions committed in violation of the Plaintiffs protected class, such as the termination of employment and demotion of employment of all named parties to this complaint; and
- Directing the reinstatement of the Plaintiff in the same or comparable professional role equal to the level held prior to the unlawful demotion; and
- Raise in salary equivalent to wages lost which would have been earned had Defendant not blocked Plaintiff's promotions., or in the alternative, provide money damages equivalent to the said amount.

- Reimbursing the Plaintiff for fifteen (15) days of time borrowed and paid back due to Defendants failure to properly exercise and implement the Human Resources policy regarding Q.A.P paid COVID-19 leave; and

- Removing all "flags" from Plaintiff HR records; and

- Removing all adverse disciplinary documentation or record created by all named Defendants or its' agents participating in Defendants unlawful conduct which were placed in the Plaintiff's physical and electronic HR file; and

- Resolution of the Complaint with Prejudice precluding all actions in the future Defendant may bring against Plaintiff.

- Negotiating a substantial severance package including all forms of monetary damages, early retirement with pension and life-time health insurance intact customarily awarded to Plaintiff following ten (10) consecutive years of civil service.

Date: January 8, 2023.                              Respectfully submitted,

                                                   /s/  *Jane Doe*
                                                   Plaintiff

(a *Pseudonym*)